UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MICHAEL HERRERA NUNEZ,

                Petitioner,

v.                           Case No. 2:26-cv-651-JES-DNF

SECRETARY, U.S. DEPARTMENT OF
HOMELAND SECURITY, et al.,

                Respondents.

_____

## OPINION AND ORDER

Petitioner Michael Herrera Nunez has been detained in immigration custody since March 1, 2026. He seeks a writ of habeas corpus under 28 U.S.C. § 2241. (Doc. 1.) He asks the Court for immediate release or an individualized bond hearing by an immigration judge. (Id.)

Upon consideration of the petition, the government's responses (Doc. 8; Doc. 12), and Herrera Nunez's replies (Doc. 9; Doc. 16), the Court concludes that the petition must be denied.

### Background

Herrera Nunez is a native and citizen of Cuba who entered the United States as a child in 1989 or 1990. (Doc. 1 at 7). He previously held lawful permanent resident (LPR) status in the United States and most recently renewed his "green card" in either November of 2025 or December of 2022. (Doc. 1 at 7; Doc. 8 at 1).

On February 1, 2026, Herrera Nunez traveled to Cuba.  (Doc. 1 at 7).  He returned to the United States via the Miami International Airport on March 1, 2026, but was denied re-entry because of several criminal convictions from 2009 and 2014.  (Id.)  He was taken into custody by the Department of Homeland Security and placed into immigration detention at Alligator Alcatraz.  (Id.) Herrera Nunez is held under the mandatory detention provisions of 8 U.S.C. § 1225 which require detention of noncitizens throughout removal proceedings.

### Discussion

An LPR (such as Herrera Nunez) who reenters the country after a trip abroad is generally not considered an arriving alien and cannot be detained under § 1225(b).  See 8 U.S.C. § 1101(a)(13)(C). However, an LPR may be subject to mandatory detention in certain circumstances.  Pertinent here, an LPR detained at the border may be considered an "arriving alien" if he "has committed an offense identified in [8 U.S.C. § 1182(a)(2)]."  See 8 U.S.C. § 1101(a)(13)(C)(v).  These offenses are defined as either a crime involving moral turpitude or a violation relating to a controlled substance.  8 U.S.C. § 1182(2)(i).

In their first response to the petition, Respondents asserted that Herrera Nunez is properly detained under § 1225(b) because he has two qualifying convictions: (1) a 2009 conviction for possession of cocaine in Miami-Dade County, Florida, which

2

resulted in probation and costs; and (2) a 2014 conviction for retail theft in Dekalb County, Illinois, which resulted in probation and restitution. (Doc. 8 at 2).

In reply, Herrera Nunez argued that Respondents did not adequately prove that he had qualifying convictions because "[w]hether a conviction triggers inadmissibility . . . requires a careful legal analysis, including application of the categorical and modified categorical approach," which Respondents had not provided. (Doc. 9 at 3). Herrera Nunez also argued that his convictions were old and should not count against him (and subject him to mandatory detention) because the government had renewed his LPR status after the crimes were committed. (Id.) In an abundance of caution, the Court ordered Respondents to file a supplemental response explaining how Herrera Nunez's specific convictions stripped him of the protections generally afforded an LPR. (Doc. 10). Respondents were also directed to respond to Herrera Nunez's argument that—by renewing his LPR status—the government implicitly concluded that his prior criminal convictions did not qualify as "offenses" under 8 U.S.C. § 1101(a)(13)(C). (Id.)

In the supplemental response, the government once again identified Herrera Nunez's 2009 conviction for possession of cocaine in Miami-Dade County, Florida and two 2014 convictions (one misdemeanor and one felony) for retail theft in Dekalb County, Illinois as implicating 8 U.S.C. § 1182(a)(2)(A. (Doc. 12 at 2).

3

Respondents argue that these crimes render an alien ineligible for admission and that an LPR "'who commits certain crimes before departure is considered an applicant for admission upon his return regardless of the length of his trip.'" (Id. at 3 (quoting Poveda v. U.S. Att'y Gen., 692 F.3d 1168, 1175 (11th Cir. 2012)). In reply, Herrera Nunez once again argued that Respondents did not satisfy their burden of establishing that his controlled substance and retail theft convictions actually qualified under 8 U.S.C. § 1182(a)(2) and rendered him subject to mandatory detention as an arriving alien. (Doc. 16).

The crux of Petitioner's argument is that he is being illegally held under § 1225(b) without a bond hearing as an "applicant for admission" because he was an LPR when he left for Cuba. He argues that the government has the burden (presumably on habeas review) of showing that he, as an LPR, was an applicant for admission when he re-entered the United States on March 1, 2026, after his trip to Cuba. The Court ordered a supplemental response because it was unclear that the government had the burden of proof to make this showing. But subsequent to this petition, the Supreme Court clarified the issue by rejecting a similar argument in Blanche v. Lau, No. 25-429, 2026 WL 1791339 (Jun. 23, 2026). In that case, Muk Choi Lau, a lawful permanent resident and citizen of China, temporarily left the United States while awaiting trial on a charge of trademark counterfeiting. When he attempted to re-

4

enter the United States at the airport, the border officer did not regard Lau as already admitted because of his pending charge. (Id. at *1). Thus, the government charged Lau as an applicant for admission who was inadmissible for having committed a crime involving moral turpitude. An immigration judge eventually found Lau removable, but he appealed the finding, and the Second Circuit concluded—among other things—that lawful permanent residents such as Lau should be regarded as already admitted upon arrival absent clear and convincing evidence that they have committed qualifying crimes (which the border officer lacked). (Id.) The Supreme Court disagreed with this conclusion, reasoning:

> Nothing in the INA imposes the burden that the Second Circuit recognized. The statute imposes similar burdens in other situations, but not in this one. It imposes the burden on the applicant for admission to prove that he is admissible. § 1229a(c)(2)(A). It imposes the burden on an alien seeking to prove that he was previously admitted. § 1229a(c)(2)(B). It imposes the burden on the Government to prove that an already-admitted alien is deportable. § 1229a(c)(3)(A). But, it nowhere says that the Government has the burden to establish by clear and convincing evidence that the alien is an applicant for admission.

(Id. at *5). The Supreme Court recognized that the Board of Immigration Appeals requires the government to "establish that a lawful permanent resident is an applicant for admission by clear and convincing evidence," but only at the time of the removal hearing, not earlier. (Id.) While the Court declined to consider

5

the issue of whether Lau had actually committed a crime involving moral turpitude, it concluded that the Government had properly charged him with inadmissibility and found that "[b]order officers did not have the burden to establish by clear and convincing evidence that Lau had committed a crime involving moral turpitude." (Id. at 6).

The same reasoning applies here. In most cases, a non-citizen who arrives in the United States and is stopped at the border is an applicant for admission or an arriving alien. 8 U.S.C. § 1225(a)(1); 8 C.F.R. § 1001.1 ("Arriving alien means an applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry"). And § 1225(b)(2) mandates detention of the noncitizen throughout removal proceedings. Herrera Nunez was stopped and detained at the border because, notwithstanding his LPR designation, border patrol agents reasonably believed that his prior criminal activity stripped him of LPR protection and mandated his detention as an arriving alien under 8 U.S.C. § 1225(b). Bond is not generally available to those detained pending removal proceedings under § 1225(b). See Jennings v. Rodriguez, 583 U.S. 281, 302 (2018) (noting that § 1225(b) "mandate[s]

6

detention of aliens throughout the completion of application proceedings.").[1]

While Herrera Nunez can raise the issue at his removal hearing of whether his crimes qualify as drug offenses or crimes of moral turpitude under 8 U.S.C. § 1182(a)(2), it would be premature to force the government in a pre-removal-hearing habeas petition to conclusively prove that Herrera Nunez was properly classified by border patrol agents as an applicant for admission. See 8 U.S.C. § 1101(a)(13)(C); Poveda, 692 F.3d at 1175; Lau, 2026 WL 1791339. Thus, for purposes of this petition, Herrera Nunez is properly held under § 1225(b) and is not entitled to a bond hearing.

In sum, Congress has mandated the detention of arriving aliens while their removal proceedings play out, and this Court is not the forum to consider whether Herrera Nunez's criminal history renders him subject to that designation. Accordingly, Petitioner's petition for writ of habeas corpus (Doc. 1) is **DENIED**. The Clerk is **DIRECTED** to enter judgment, terminate any pending motions, and close the file.

---

[1] The only statutory exception to detention under either § 1225(b)(1) or (2) is parole. "[A]pplicants for admission may be temporarily released on parole 'for urgent humanitarian reasons or significant public benefit.' " Jennings v. Rodriguez, 583 U.S. 281, 288 (2018) (quoting 8 U.S.C. § 1182(d)(5)(A); and then citing 8 C.F.R §§ 212.5(b) & 235.3). Whether Herrera Nunez qualifies for parole is not an issue for the District Court on habeas review. See 8 C.F.R. § 212.5(a) (noting parole requests are considered by designated officials including ICE "directors of field operations.").

**DONE AND ORDERED** in Fort Myers, Florida on June 29, 2026.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE